IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

BIG GUY⌀S PINBALL, LLC,

      Plaintiff,               Civil Action No. 2:14-cv-14185-VAR-RSW

      v.                    Hon. Victoria A. Roberts
                              United States District Judge

JIMMY LIPHAM,

                              Hon. Laurie J. Michaelson
      Defendant.       United States Magistrate Judge

_____/

Robert A. Farr , Jr.             Eric C. Grimm (P58990)
ROBERT A. FARR PLLC     WILLIAMS | HUGHES, PLLC
1050 Shiawassee Circle      120 W. Apple Avenue
Howell, MI 48843           P.O. Box 599
248-703-0662               231-728-1111
Email: rfarr@rfarrlaw.com    Fax: 231-727-2130
                             Email: ecgrimm@williamshugheslaw.com

_____/

**MOTION FOR AN EXTENSION OF TIME AND
PRELIMINARY MOTION TO DISMISS FOR LACK OF PERSONAL JURISDICTION,
FOR IMPROPER VENUE, AND FOR FAILURE TO STATE A CLAIM UP ON WHICH
<u>RELIEF CAN BE GRANTED, AND MOTION TO TRANSFER VENUE</u>**

NOW COMES Defendant Jimmy Lipham, through undersigned counsel, and respectfully

moves for an extension of time through and including December 29, 2014, to file a more detailed

motion and brief, with supporting affidavits, supporting his motion to dismiss for lack of

personal jurisdiction (12(b)(2)); motion to dismiss for improper venue (12(b)(3)), and motion to

dismiss for failure to state a claim (12(b)(6)).  The reason that an extension of time is requested

is due to some rather extraordinary and difficult personal circumstances of defense counsel, that

we would prefer not to have to elaborate upon in court papers.  However, despite making

multiple requests for more than a ten (10) day extension to Plaintiff's counsel, the Defendant and counsel have not been able to secure voluntary cooperation from Plaintiff's legal counsel. Plaintiff will suffer no material prejudice whatsoever, if the deadline for filing the full motion is extended to shortly after the Christmas holiday.

In the meantime, in an abundance of caution, Defendant respectfully moves to dismiss on the foregoing grounds, and also moves under 28 U.S.C. sec. 1404(a) to transfer venue for the convenience of parties and witnesses.

This motion is accompanied by a supporting brief.

Dated:  December 10, 2014                         Respectfully submitted,


                                                   _/s/ Eric C. Grimm_____
                                                   Eric C. Grimm (P58990)
                                                   WILLIAMS | HUGHES, PLLC
                                                   120 W. Apple Avenue
                                                   P.O. Box 599
                                                   Muskegon, MI 49443-0599
                                                   231-728-1111
                                                   Fax: 231-727-2130
                                                   Email: ecgrimm@williamshugheslaw.com

IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

BIG GUY∅S PINBALL, LLC,

        Plaintiff,                    Civil Action No. 2:14-cv-14185-VAR-RSW

        v.                            Hon. Victoria A. Roberts
                                      United States District Judge
JIMMY LIPHAM,
                                      Hon. Laurie J. Michaelson
        Defendant.                    United States Magistrate Judge
_____/
Robert A. Farr , Jr.                  Eric C. Grimm (P58990)
ROBERT A. FARR PLLC                   WILLIAMS | HUGHES, PLLC
1050 Shiawassee Circle                120 W. Apple Avenue
Howell, MI 48843                      P.O. Box 599
248-703-0662                          231-728-1111
Email: rfarr@rfarrlaw.com             Fax: 231-727-2130
                                      Email: ecgrimm@williamshugheslaw.com
_____/

**BRIEF IN SUPPORT OF MOTION FOR AN EXTENSION OF TIME AND
PRELIMINARY MOTION TO DISMISS FOR LACK OF PERSONAL JURISDICTION,
FOR IMPROPER VENUE, AND FOR FAILURE TO STATE A CLAIM UP ON WHICH
RELIEF CAN BE GRANTED, AND MOTION TO TRANSFER VENUE**

        NOW COMES Defendant Jimmy Lipham, through undersigned counsel, and respectfully

moves for an extension of time through and including December 29, 2014, to file a more detailed

motion and brief, with supporting affidavits, supporting his motion to dismiss for lack of

personal jurisdiction (12(b)(2)); motion to dismiss for improper venue (12(b)(3)), and motion to

dismiss for failure to state a claim (12(b)(6)).

        Defendant, in an abundance of caution, also respectfully moves to dismiss on the

foregoing grounds, as well as to transfer venue under 28 U.S.C. sec. 1404(a), for the convenience

of parties and witnesses.  The Defendant resides in the Northern District of Georgia, and can be "found" there for purposes of 28 U.S.C § 1400(a).  Indeed, he <u>has</u> been "found" there, as that is exactly where the Plaintiff's counsel has performed personal service upon him.  He cannot be "found" in Michigan.  Mr. Lipham (and we are happy to secure and introduce one or more affidavits to this effect) has absolutely no contacts, ties, or relations to Michigan, for purposes of <u>International Shoe Co. v. Washington</u>, 326 U.S. 310 (1945), or the Michigan long-arm statute.

Mr. Lipham does not reside in Michigan and never has resided here.  It would be a financial hardship to him, to have to litigate in the State of Michigan.  He does not transact business in Michigan, and has not done so – either on a repeated, continuous, and systematic basis, or otherwise.  He has not formed any Michigan corporations or other business entities.  He has no bank account with any Michigan bank.  He owns no interest in any real estate in Michigan.  He has not, in any circumstance ever, purposefully availed himself of the state of Michigan or the benefits and protections of its laws.

Notably, for purposes of dismissal of the Plaintiff's claims under FED. R. CIV. P. 12(b)(6), we respectfully note the language of 17 U.S.C. sec. 412, which substantially limits the potential remedies available to a copyright owner (if, indeed the Plaintiff is such an owner), if the copyright is not timely registered.  Exhibit B to the Plaintiff's Complaint, discloses that the effective date of registration that the Plaintiff relies upon, is January 31, 2014.

It is far from clear that the Plaintiff alleges any conduct whatsoever by the Defedant, Mr. Lipham, occurring on or after January 31, 2014. We have no reason to believe (for reasons explained in more detail below) that Mr. Liphap has ever infringed or intendedto infringe any copyright whatsoever.   But even assuming that some form of actionable infringement were alleged, the protracted lack of any registration, is fatal to all or most of Plaintiff's claims.

## WHAT THIS CASE IS ABOUT

Defense counsel respectfully apologizes for the informality of the following discussion. This is not due to an inability to submit court papers in the customary õlegaleseö format that is customary in federal court.  We respectfully think that Judges Battani, Borman, Cleland, Drain, Edmunds, Hood, Lawson, and Ludington, perhaps among others, can confirm that counsel ó given time ó can present ample caselaw and legal argument in a whole variety of what might be termed õInternet cases.ö  But sometimes it helps to get the point across more directly, without couching it in legal citations and excessive formality.

A global transformation is taking place because of the Internet; millions of people in the farthest and poorest corners of the world through simple handheld devices and tablets such as the One Laptop Per Child (OLPC) XO, suddenly find themselves with access to nearly the entire cultural heritage of humanity at a touch.  Imagine the empowerment and innovation that such a thing catalyzes!  And the technological infrastructure on which that catalytic process critically depends, is principally based on Free Software (www.fsf.org) and Open Source software.

Free Software is a collaborative ecosystem based on principles of reciprocity.  With the addition of the Linux kernel (which is licensed under the GNU General Public License ó GPL ó software license), the GNU/Linux operating system enables virtually any computational device (including most of the supercomputers at our national research laboratories and the National Security Agency) to operate without having to pay any licensing royalties at all to the extent that these machines run Free Software.  Software and computing giants like Google and Red Hat critically depend on Free Software for their daily operations.  Although World Wide Web servers are available that run proprietary software, the majority of servers that make Web pages available, operate using the LAMP stack ó Linux, Apache, MySQL, and PHP.  All Free

Software.   The benefit to humanity of Free Software, written largely by volunteers, and contributed to the Free Software ecosystem without demanding royalties, is incalculable.   Free Software, including the Linux kernel, beats in the heart of every Android mobile device in the world – over a billion of them, and growing.

The Free Software ecosystem works, and accomplishes what seem to be economic miracles, through legal arrangements that reinforce principles of reciprocity (this is called "copyleft").   The leading license for Free Software today is the 3.0 version of the GNU General Public License -- the GPL.   The 2.0 version remains in widespread use.   In some cases, the Lesser GPL is also used (the "LGPL").    Rather than parsing the language (which anyone can look up on the FSF.org Website) of each license, it is most helpful to borrow from Richard Stallman, and to emphasize the Four Freedoms that these licenses are designed to protect.   See < http://www.gnu.org/philosophy/free-sw.html >.

Freedom Zero is "The freedom to run the program as you wish, for any purpose."  This is not just the freedom of the authors to run the program, but the Freedom of **anybody** who accepts the terms of the GPL or the LGPL by executing (running) or copying the program.

Freedom One is "The freedom to study how the program works, and change it so it does your computing as you wish (freedom 1). Access to the source code is a precondition for this." Again **anyone** who copies or executes the program, or who modifies it is supposed to have this freedom.

Freedom Two is "The freedom to redistribute copies so you can help your neighbor." Nobody has to pay royalties to the author of the work, in order to copy and redistribute it within the Free Software Community.  The benefit of having access – the Four Freedoms – with respect to all the software that has been contributed into the Free Software ecosystem, vastly outweighs

the sacrifice that one makes, by foregoing the right to exclude others from a copyrighted work, by choosing to share it instead under the GPL, the LGPL, or a similar license.

Freedom Three is õThe freedom to distribute copies of your modified versions to others (freedom 3). By doing this you can give the whole community a chance to benefit from your changes. Access to the source code is a precondition for this.ö

In order for Free Software to remain Free Software, licenses such as the GPL and the LGPL must require a condition of people who use, or modify, or copy, Free Software.  If you make a derivative work based on Free Software, you cannot free-ride on the efforts of the ecosystem, by selling the derivative work, as if it is proprietary software.

The requirement of the GPL and the LGPL, is that those who make derivative works, must õgive backö to the community in the spirit of reciprocity.

In contrast, there are other licenses ó such as the BSD family of licenses, that are Open Source licenses, but not Free Software licenses.  Some of the initial work of Apple Computer, on the OSX operating system, involved the creation of derivative works based on the MACH kernel and other elements of one or more BSD distributions of UNIX.  These distributions had licenses that did not include the õgive backö requirements of the GPL or the LGPL, and Apple took its derivative works proprietary, without sharing ó thus free-riding on the efforts of thousands or tens of thousands of people who created the building blocks that Apple built upon.

The Free Software ecosystem, in contrast, uses well-understood licenses, to make reciprocity mandatory ó especially for those who would free-ride on the efforts of the community, by attempting to distribute as proprietary software, a piece of code that is a derivative work of GPL-licensed or LGPL-licensed software.

Within this context, it is important to understand what QEMU is.   See  <
http://wiki.qemu.org/Main_Page >.   QEMU is a package of software, that can run on top of
virtually any computer that can run the GNU/Linux operating system.   QEMU enables one
compute to "emulate" the operation of one or more legacy computers – to become a virtual DOS-
based IBM PC, for instance, or a PDP-11, or an Atari 2600 game console, or many other
possibilities.  This is useful for people who want to execute legacy software that might need to be
modified extensively to run in the context of the latest hardware and software.

Copyright cases tend to have a moral component to them – namely, identifying who the
free-rider is, who is taking advantage of the effort of others for personal profit.  For instance, in
the book The Trial Lawyers, by Emily Couric, a chapter is devoted to attorney Fred Bartlit, and a
case he handled involving an uncopyrightable database belonging to Dun & Bradstreet.   The
winning strategy for Bartlit was to emphasize the amount of work it took to assemble the
database, and to portray the other side as a free-rider trying to take advantage of the work of
D&B.  With all respect to Big Guys Pinball, the Complaint in this case most emphatically
misidentifies the alleged free-rider.

What the evidence will show in this case (and the reason why 12(b)(6) dismissal is in
order) is that the software that Big Guys Pinball no longer sells, is a derivative work of QEMU.

The Defendant, Jimmy Lipham, has never attempted to earn a dime (and has not earned a
dime) off of any work of Big Guys Pinball.  Lipham is emphatically **not** the free-rider in this
case.  All Lipham is, is one of millions of grateful and cooperative active participants in the Free
Software ecosystem, and someone who emphatically supports the core principles of Free
Software (which include giving back) for the demonstrable benefit of all humanity.

Big Guys Pinball, on the other hand, by making a derivative work of QEMU, and attempting to profit off of that derivative work, without releasing the source code of their changes, and without releasing the derivative work as required under the GPL and/or LGPL, acted as a free-rider to the detriment not only of Lipham, but of the entire Free Software ecosystem. And that's what this case is all about.

## MOTION FOR EXTENSION OF TIME

Defense counsel has some rather unusual circumstances, and we regret to provide this much detail to the court. In nearly any other circumstance, counsel would merely work longer and harder, and just get a complete brief on file.

Defense counsel currently has a very challenging elder care responsibility, caring for his mother who has been diagnosed with dementia, Type II Diabetes, bipolar disorder, and other conditions. This difficulty is compounded by at least one criminal prosecution against one of counsel's sisters, and the sister's longtime boyfriend, for taking financial advantage of this vulnerable adult. Principally because the defendants have changed counsel repeatedly, the criminal trial in that case has been adjourned eight (8) times.

There is another sister (daughter of the ward), who is also presently under criminal investigation but who has not yet been charged. Bank records confirm that the sister who has not yet been charged, had enough influence over her mother, to induce her to make a number of wire transfers to that sister in Arizona, in amounts up to and including $30,000.00. The sister who has been charged, has been involved in a real estate transaction for more than $62,000.00, and also receiving more than $38,000.00 from the mother's home equity line. The boyfriend of the sister who has been charged, according to the mother's testimony, made at least one threat of physical violence, to induce the mother to depart with these funds.

9

The defendants in these criminal cases have not been making their defense principally in court – but through a campaign of character assassination directed at their brother (legal counsel for Mr. Lipham in this case). This includes a letter to every member of the Muskegon County Bar Association, fake attorney reviews on review websites, multiple postings in the "Comments" below news articles on the MLive website, telephone calls to this attorney's co-workers, and to senior management for the law firm's biggest clients – the County of Muskegon, Muskegon Charter Township, and others.

While the pace of proceedings has been slow at times, since September, 2014, two cases involving the guardianship and conservatorship of counsel's mother, have generated an inordinate demand on counsel's time. Counsel became guardian and conservator for his mother in August, 2011. Two years prior to that, counsel purchased a home that his mother had picked out, because he was eligible and she was not, for a homebuyer credit. The legal requirement under the tax code was that the buyer (counsel) live in and occupy the home for not less than three (3) years, which has been fulfilled, and now the house can be transferred without tax penalty. In the meantime, the mother has received over $46,000.00 in principal and interest payments, and can also secure the house at a price $19,000.00 less than the son / counsel paid for it. Good deal for her, no?

Well, not according to a personal friend of the Guardian Ad Litem, who the GAL enlisted to act as "special fiduciary" on the proposed transaction. It is not clear exactly what the motives are of the GAL and the "special fiduciary," but their recent behavior has been peculiar, to say the least. The SF was initially hired to calculate the exact amount remaining due on a note, and to approve the selection of an appraiser to determine what the house was worth.

Instead, the SF – who has no social work background and who is not qualified to make this determination – proposed she would make a "suitability" determination of the house as a place for the ward to live.  But she would do so without a medical records review, without any communication with the ward about the ward's wishes, and without any communication with anyone (including the son/guardian) in the ward's support network.  We pointed out that this is not a role she is qualified to perform.  And the GAL agreed, and took it out.  And the SF promised just to have an appraiser enter the house (albeit overbilling the Estate for two hours, by having two people present at the house, rather than just the appraiser).

Now, the house has been evaluated for suitability in the past on no fewer than five different occasions, twice by nursing home social work professionals, twice by nurses, at least once by a social worker employed by Senior Resources of West Michigan.  It is visited frequently by trained personnel of Dayspring elder care services.  And Agewell Services had people coming in there on a daily basis for an extended time.  Moreover, on the weekend of October 29, 2014, we had a social worker who specializes in dementia come in and do a complete suitability workup.  All these professionals have uniformly said this is not just a suitable, but superior location for the ward to live.

The Special Fiduciary hand-picked by the GAL, however, had a point of view (that the son/counsel still has not even been allowed by the Probate Court to see), that is diametrically at odds with every professional who has looked at the situation.  It would certainly be convenient, from a billing perspective, for the GAL and the SF to take over and start charging for a portfolio of services, that the son/guardian has to date been performing for free.  And, based on the SF's report (which the son/guardian cannot see for now), the GAL has moved for the son to be removed as guardian / conservator.  Plus, an accounting firm is being retained to perform an

audit not only of the financial irregularities involving the sisters, but to go on a fishing expedition to see whether the son/guardian/legal counsel can be found over a three-year period, to have done anything that can be called into question. We are reasonably confident that the audit will turn out just fine from the perspective of the son/guardian/counsel. But supplying all the records to the accountant is going to take some time and effort, as will a newly-ordered visitation process with the daughter/sister who has not been charged, yet.

This whole difficult circumstance, as this honorable Court may imagine, has made it considerably more challenging than usual, to work up the factual record in the instant case, and to prepare the customary quality of dismissal motion that legal counsel is accustomed to presenting in cases in the Eastern District of Michigan.

Counsel personally apologizes to the Court that it is a real, personal, challenge keeping up with all these competing demands on counsel's personal time. However, we respectfully suggest that the Plaintiff and Plaintiff's counsel will suffer no prejudice whatsoever, if the Court can grant a reasonable extension of time, so as to enable full briefing to be completed.

We have contacted counsel for the plaintiff, and attempted to explain that the present circumstances are highly unusual. However, legal counsel for Big Guys Pinball has not been willing to cooperate – or even to agree to the fourteen (14) day extension that we initially requested. Moreover, other than claiming that some sense of personal animosity exists toward Mr. Lipham by the owners of Big Guys Pinball, we have not heard from legal counsel for the Plaintiff, any rationale or reason for insisting on such a sense of urgency, in the face of a request for a reasonable scheduling accommodation by the defense, due to somewhat extraordinary circumstances.

<u>**REASONS FOR DISMISSAL**</u>

There are four reasons that the Complaint should be dismissed.  Additionally, under 28 U.S.C. sec. 1404, venue should be transferred to the Northern District of Georgia, for the convenience of parties and witnesses.   Any documents to be used by the Plaintiff are already attached to the Complaint, and are geographically irrelevant.   Documents to be secured in discovery, are all in Georgia, not in Michigan.  Any witnesses with personal knowledge of any of Mr. Lipham's alleged activities, all are located in Georgia.  Travel from Georgia to Michigan is not convenient for Mr. Lipham.  For purposes of 28 U.S.C. sec. 1400, concerning venue in copyright cases, Mr. Lipham cannot be found in Michigan, and never has been able to be found in Michigan.  The venue selected by the Plaintiff is just plain wrong.

Moreover, Mr. Lipham is not subject to personal jurisdiction, either under the Michigan long-arm statute, or under <u>International Shoe</u> and its progeny.  He has no contacts, ties, or relations, whatsoever, with Michigan.  He was served in Georgia (i.e., "found" there), not in Michigan.  It would violate basic principles of due process – of fair play and substantial justice – to force Mr. Lipham (who never has received a dime from QEMU or any derivative) to defend an expensive lawsuit in Michigan.

Additionally, the case should be dismissed for failure to state a claim.  It would be grossly inequitable to allow Big Guys Pinball to sue Jimmy Lipham.  Big Guys Pinball created a derivative work of QEMU, and then violated both the copyright of the QEMU authors, and also the GPL and LGPL (of which licenses, Lipham is an intended third-party beneficiary).

Even assuming that all the allegations in the Complaint are true, all Lipham is accused of doing, is exactly what the GPL and LGPL give him every legal right to do, when Big Guys Pinball intentionally have not fulfilled the "give back" requirements of the GPL and LGPL, with

13

respect to their derivative work of QEMU.  Finally, the Complaint is subject to dismissal, either as a whole or in part, due to the operation of Section 412 of the Copyright Act, and the requirement of registration.  The Plaintiff's registration was not effective until January 31, 2014, and everything that the Plaintiff alleges preceded that date.  We do not believe (in light of Big Guys Pinball's apparent violation of the GPL and the LGPL), that any infringement whatsoever, occurred.  But even assuming all the allegations in the Complaint to be true, Section 412, 17 U.S.C. sec. 412, still is fatal to the Plaintiff's claims.

Accordingly, the Defendant requests a reasonable extension of time, due to highly unusual circumstances.  Alternatively, please allow this motion to serve as a Motion to Dismiss, and to transfer venue, for the reasons set forth above.

Dated:  December 10, 2014                         Respectfully submitted,


                                                   /s/ Eric C. Grimm_____
                                                  Eric C. Grimm (P58990)
                                                  WILLIAMS | HUGHES, PLLC
                                                  120 W. Apple Avenue
                                                  P.O. Box 599
                                                  Muskegon, MI 49443-0599
                                                  231-728-1111
                                                  Fax: 231-727-2130
                                                  Email: ecgrimm@williamshugheslaw.com

**CERTIFICATE OF SERVICE**

I certify that the foregoing Motion for an Extension of Time, Motion to Dismiss, and Motion to Transfer Venue, is being filed through the Court's Electronic Case Management (ECM) system, on December 10, 2014.  The ECM system will automatically transmit a copy of said motion to all counsel of record.

Respectfully submitted,


Dated: December 10, 2014                        ___/s/ Eric C. Grimm_____
                                                Eric C. Grimm (P58990)
                                                Williams | Hughes, PLLC
                                                120 West Apple Avenue
                                                P.O. Box 599
                                                Muskegon, MI  49443-0599
                                                (231) 728-1111
                                                Fax:    (231) 727-2130
                                                Email:
                                                ecgrimm@williamshugheslaw.com