IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

BIG GUY'S PINBALL, LLC,

    Plaintiff,                                  Civil Action No. 2:14-cv-14185-VAR-RSW

    v.                                           Hon. Victoria A. Roberts
                                                 United States District Judge

JIMMY LIPHAM,

                                                 Hon. R. Steven Whalen
    Defendant.                           United States Magistrate Judge
_____/

| Robert A. Farr, Jr. | Eric C. Grimm (P58990) |
|---|---|
| ROBERT A. FARR PLLC | WILLIAMS \| HUGHES, PLLC |
| 1050 Shiawassee Circle | 120 W. Apple Avenue |
| Howell, MI 48843 | P.O. Box 599 |
| 248-703-0662 | 231-728-1111 |
| Email: rfarr@rfarrlaw.com | Fax: 231-727-2130 |
| | Email: ecgrimm@williamshugheslaw.com |

_____/

**ADDENDUM -- BRIEF IN SUPPORT OF AMENDED MOTION TO DISMISS FOR LACK OF PERSONAL JURISDICTION, FOR IMPROPER VENUE, AND FOR FAILURE TO STATE A CLAIM UP ON WHICH RELIEF CAN BE GRANTED, AND MOTION TO TRANSFER VENUE**

    NOW COMES Defendant Jimmy Lipham, through undersigned counsel, and respectfully moves to dismiss for lack of personal jurisdiction (12(b)(2)); for improper venue (12(b)(3)), and for failure to state a claim (12(b)(6)). Defendant also respectfully moves to transfer venue under 28 U.S.C. § 1404(a), for the convenience of parties and witnesses.

    The Defendant resides in the Northern District of Georgia, and can be "found" there for purposes of 28 U.S.C § 1400(a). Indeed, he has been "found" there, as that is exactly where the

Plaintiff's counsel has arranged for personal service upon him. He cannot be "found" in Michigan. Mr. Lipham has absolutely no contacts, ties, or relations to Michigan, for purposes of International Shoe Co. v. Washington, 326 U.S. 310 (1945), or the Michigan long-arm statute. Mr. Lipham certainly has not "purposefully availed" himself of the State of Michigan, or of the benefits and protections of its laws. See Affidavit of Jimmy Lipham (Jan. 7, 2015) (Rec. Ent. 19). Mr. Lipham does not reside in Michigan and never has resided here. Id. It would be a financial hardship to him, to have to litigate in the State of Michigan. Id. He does not transact business in Michigan, and has not done so – either on a repeated, continuous, and systematic basis, or otherwise. Id. He has not formed any Michigan corporations or other business entities. He has no bank account with any Michigan bank. Id. He owns no interest in any real estate in Michigan. Id. He has not, in any circumstance ever, purposefully availed himself of the state of Michigan or the benefits and protections of its laws. Id.

Notably, for purposes of dismissal of the Plaintiff's claims under FED. R. CIV. P. 12(b)(6), we respectfully note the language of 17 U.S.C. § 412, which substantially limits the potential remedies available to a copyright owner (if, indeed the Plaintiff is such an owner), if the copyright is not timely registered. Exhibit B to the Plaintiff's Complaint, discloses that the effective date of registration that the Plaintiff relies upon, is January 31, 2014.

It is far from clear that the Plaintiff alleges any conduct whatsoever by the Defendant, Mr. Lipham, occurring on or after January 31, 2014. We have no reason to believe (for reasons explained in more detail below) that Mr. Lipham has ever infringed or intended to infringe any copyright whatsoever. See, e.g., Software Freedom Conservancy, Inc. v. Best Buy Co., Inc., No. 09 Civ. 10155(SAS), 2010 WL 2985320, at *1 & nn. 4-6; *3 (S.D.N.Y. July 27, 2010); see also Oracle Am., Inc. v. Google Inc., 750 F.3d 1339, 1350, 1368-72 (Fed. Cir. 2014) ("[T]he General

Public License, which is free of charge . . . provides that the licensee can use the packages -- both the declaring and implementing code, but must "contribute back" its innovations to the public. This arrangement is referred to as an "open source" license.").  But even assuming that some form of actionable infringement were alleged (rather than illegal conduct by the Plaintiff), the protracted lack of any registration, is fatal to all or most of Plaintiff's claims.  17 U.S.C. § 412.  At present, the Defendant is not copying and has no present plan to copy, Nucore, any time in the future, and indeed is more than prepared to make a formal promise never to do so.  If the only remedy even conceivably obtainable by Big Guys Pinball, is a prospective injunction – see 17 U.S.C. § 412; Lipham Aff. (Rec. Ent. 19), then <u>Buckhannon Bd. & Care Home, Inc. v. West Va. Dept. of Health & Human Resources</u>, 532 U.S. 598 (2001), and <u>City News & Novelty, Inc. v. City of Waukesha</u>, 531 U.S. 278 (2001), would appear to require dismissal of the Plaintiff's claims, as moot.  Mere speculation that the Defendant <u>could</u>, hypothetically, make an unauthorized copy in the future, or distribute such a copy to the public, on or after the effective date of the Plaintiff's copyright registration, is not sufficient to overcome the mootness doctrine. <u>Id.</u>  Here, the Defendant has no reason whatsoever personally to want to copy or distribute Nucore, and has never profited in any way whatsoever, or harmed the Plaintiff in any way, from the brief time that Nucore allegedly was publicly available, pre-registration.

## **WHAT THIS CASE IS ABOUT**

Defense counsel respectfully apologizes for the informality of the following discussion.  But sometimes it helps to get the point across more directly, without couching it in legal citations and excessive formality.  For more legal discussion about the software license issues at hand, please consult the <u>Software Freedom Conservancy</u> and <u>Oracle</u> decisions, *supra*, as well as <u>Versata Software, Inc. v. Ameriprise Financial, Inc.</u>, No. A-14-CA-12-SS, 2014 WL 950065, at

\*5 (W.D. Tex. Mar. 11, 2014) (identifying, but not deciding, interesting question of intended third-party beneficiary standing of non-owner persons in Free Software community to rely on legal terms of the GPL); <u>Wallace v. International Business Machines Corp.</u>, 467 F.3d 1104 (7th Cir. 2006), and other court decisions.

A global transformation is taking place because of the Internet; millions of people in the farthest and poorest corners of the world through simple handheld devices and tablets such as the One Laptop Per Child (OLPC) XO, suddenly find themselves with access to nearly the entire cultural heritage of humanity at a touch. Imagine the empowerment and innovation that such a thing catalyzes! And the technological infrastructure on which that catalytic process critically depends, is principally based on Free Software ([www.fsf.org](www.fsf.org)) and Open Source software.

Free Software is a collaborative ecosystem based on principles of reciprocity. With the addition of the Linux kernel (which is licensed under the GNU General Public License ó GPL ó software license), the GNU/Linux operating system enables virtually any computational device (including most of the supercomputers at our national research laboratories and reportedly some at the National Security Agency) to operate without having to pay any licensing royalties at all to the extent that these machines run Free Software. Software and computing giants like Google and Red Hat critically depend on Free Software for their daily operations. Although World Wide Web servers are available that run proprietary software, the majority of servers that make Web pages available, operate using the LAMP stack ó Linux, Apache, MySQL, and PHP. All Free Software. The benefit to humanity of Free Software, written largely by volunteers, and contributed to the Free Software ecosystem without demanding royalties, is incalculable.

Free Software, including the Linux kernel, beats in the heart of every Android mobile device in the world ó over a billion of them, and growing.

The Free Software ecosystem works, and accomplishes what seem to be economic miracles, through legal arrangements that reinforce principles of reciprocity (this is called õcopyleftö). The leading license for Free Software today is the 3.0 version of the GNU General Public License -- the GPL. The 2.0 version remains in widespread use. In some cases, the Lesser GPL is also used (the õLGPLö). Rather than parsing the language (which anyone can look up on the FSF.org Website) of each license, it is most helpful to borrow from Richard Stallman, and to emphasize the Four Freedoms that these licenses are designed to protect. See < http://www.gnu.org/philosophy/free-sw.html >.

Freedom Zero is õThe freedom to run the program as you wish, for any purpose.ö This is not just the freedom of the authors to run the program, but the Freedom of **anybody** who accepts the terms of the GPL or the LGPL by executing (running) or copying the program.

Freedom One is õThe freedom to study how the program works, and change it so it does your computing as you wish (freedom 1). Access to the source code is a precondition for this.ö Again **anyone** who copies, executes, or modifies the program is supposed to have this freedom.

Freedom Two is õThe freedom to redistribute copies so you can help your neighbor.ö Nobody has to pay royalties to the author of the work, in order to copy and redistribute it ó thereby becoming part of the Free Software community. The benefit of having access ó the Four Freedoms ó with respect to all software that has been contributed into the Free Software ecosystem, vastly outweighs the sacrifice that one makes, by foregoing the right to exclude others from a work, by choosing to share it instead under the GPL, or similar licenses.

Freedom Three is õThe freedom to distribute copies of your modified versions to others (freedom 3). By doing this you can give the whole community a chance to benefit from your changes. Access to the source code is a precondition for this.ö

In order for Free Software to remain Free Software, licenses such as the GPL and the LGPL must require a condition of people who use, or modify, or copy, Free Software. If you make a derivative work based on Free Software, you cannot free-ride on the efforts of the ecosystem, by selling the derivative work, as proprietary software, and excluding others.

The requirement of the GPL and the LGPL, is that those who make derivative works, must "give back" to the community in the spirit of reciprocity.

In contrast, there are other licenses – such as the BSD family of licenses, that are Open Source licenses, but not Free Software licenses. Some of the initial work of Apple Computer, on the OSX operating system, involved the creation of derivative works based on the MACH kernel and other elements of one or more BSD distributions of UNIX. These distributions had licenses that did not include the "give back" requirements of the GPL or the LGPL, and Apple took its derivative works proprietary, without sharing – thus free-riding on the efforts of thousands or tens of thousands of people who created the building blocks that Apple built upon.

The Free Software ecosystem, in contrast, uses well-understood licenses, to make reciprocity mandatory – especially for those who would free-ride on the efforts of the community, by attempting to distribute <u>as</u> proprietary software, a piece of code that is a derivative work of GPL-licensed or LGPL-licensed software.

Within this context, it is important to understand what QEMU is. <u>See</u> < <u>http://wiki.qemu.org/Main_Page</u> >. QEMU is a package of software, that can run on top of virtually any computer that can run the GNU/Linux operating system. It is, in many ways, a lot like the "Busybox" program that Westinghouse deliberately infringed, in the <u>Software Freedom Conservancy</u> lawsuit, *supra*. QEMU enables one computer to "emulate" the operation of one or more legacy computers – to become a virtual DOS-based IBM PC, for instance, or a PDP-11, or

an Atari 2600 game console, or many other possibilities. This is useful for people who want to execute legacy software that might need to be modified extensively to run in the context of the latest hardware and software.

Copyright cases tend to have a moral component to them ó namely, identifying who the free-rider is, who is taking advantage of the effort of others for personal profit.

For instance, in the book The Trial Lawyers, by Emily Couric, a chapter is devoted to attorney Fred Bartlit, and a case he handled involving an uncopyrightable database belonging to Dun & Bradstreet. The winning strategy for Bartlit was to emphasize the amount of work it took to assemble the database, and to portray the other side as a free-rider trying to take advantage of the work of D&B. With all respect to Big Guys Pinball, the Complaint in this case most emphatically misidentifies the alleged free-rider.

What the evidence will show in this case (and the reason why 12(b)(6) dismissal is in order) is that the software that Big Guys Pinball no longer sells, is a derivative work of QEMU. See Lipham Affidavit (Rec. Ent. 19) (showing that Nucore is clearly a derivative of QEMU, thus requiring release under a Free Software license, and that Lipham has not personally benefitted, particularly financially, from anything alleged in the Complaint).

The Defendant, Jimmy Lipham, has never attempted to earn a dime (and has not earned a dime) off of any work of Big Guys Pinball. Id. Lipham is emphatically **not** the free-rider in this case. Id. All Lipham is, is one of millions of grateful and cooperative active participants in the Free Software ecosystem, and someone who emphatically supports the core principles of Free Software (which include giving back) for the demonstrable benefit of all humanity.

Big Guys Pinball, on the other hand, by making a derivative work of QEMU, and attempting to profit off of that derivative work, without releasing the source code of their

changes, and without releasing the derivative work as required under the GPL and/or LGPL, acted as a free-rider to the detriment not only of Lipham, but of the entire Free Software ecosystem. See, e.g., Software Freedom Conservancy, Inc. v. Best Buy Co., Inc., No. 09 Civ. 10155(SAS), 2010 WL 2985320, at *1 & nn. 4-6; *3 (S.D.N.Y. July 27, 2010).

And that's what this case is all about.

## **MOTION TO DISMISS FOR LACK OF JURISDICTION / IMPROPER VENUE**

Venue in a copyright case, is addressed in 28 U.S.C § 1400(a). According to that statute, such a suit "may be instituted in the district in which the defendant or his agent resides or may be found." Id. (emphasis added). Defendant has no agents, especially in any way pertaining to the Plaintiff's infringement of QEMU and the right of the Free Software community to expect that derivatives of QEMU like Nucore, conform to the requirements of the GPL. Obviously, the district in which the Defendant resides, is the Northern District of Georgia – which, in fact is where he was found for purposes of personal service. Despite the plain and unambiguous statutory text (which prevailing principles of statutory interpretation require to be understood as written), at least some court decisions instead offer a peculiar interpretation of Section 1400, that a defendant "can be found" anyplace that he or she transacts personal business in a continuous and systematic manner, and/or purposefully avails himself or herself of the benefits and protections of another state's laws. E.g., Foreign Candy Co., Inc. v. Tropical Paradise, Inc., 950 F. Supp. 2d 1017 (N.D. Iowa 2013). Merely because a copyright lawsuit is filed in the plaintiff's home jurisdiction (where the Plaintiff always claims to feel "harm," in any such case), does not mean that personal jurisdiction automatically is present in the plaintiff's "home court." Id. (dismissing based on lack of jurisdiction and refusing to allow jurisdictional discovery). But this view collapses the venue inquiry to a personal jurisdiction inquiry. Of course, equally-

persuasive case-law, dealing with the situation in this case – namely, when the defendant is an individual and not a corporation – holds that the "found" inquiry requires an individual like Lipham to be sued in his or her own home judicial district. Blue Compass Corp. v. Polish Masters of America, 777 F. Supp. 4, 5-6 (D. Vt. 1991) (even though individual is subject to personal jurisdiction, venue is improper due to plain language reading of the statute).

We respectfully suggest that the plain-language reading of the venue statute, ought to be controlling in this instance, and the case either dismissed or transferred to the Northern District of Georgia. This result is reinforced by basic principles of due process[1] in personal jurisdiction cases. See Beydoun v. Wataniya Restaurants Holding, Q.S.C., 768 F.3d 499 (6th Cir. 2014). As explained in Mr. Lipham's affidavit, the Defendant has absolutely no contacts, ties, or relations to or with the State of Michigan, and has transacted no business here, either in a continuous and systematic manner, or otherwise. An elaborate due process analysis of long-arm jurisdiction is unnecessary – simply put, there is no jurisdictional basis for Lipham to be sued in Michigan. We anticipate that Big Guys Pinball may attempt to rely on the Calder v. Jones "effects test" – which supports personal jurisdiction in certain cases involving intentional torts that are known to be harmful. But this certainly is not a Calder-type case.

First of all, where's the harm?? As demonstrated in the Lipham affidavit, and Plaintiff's own Complaint, Big Guys Pinball had pulled Nucore from the market (but still had not registered

---

[1] We respectfully suggest that the Zippo-dot-com "sliding scale" of "interactivity" also does not serve as a proper proxy or surrogate for minimum jurisdictional contacts, because the facts alleged in this case are so dissimilar to any kind of sustained so-called "interactive" website. Moreover, despite the Sixth Circuit's initial flirtation with Zippo, in Neogen Corp. v. Neo Gen Screening, Inc., 282 F.3d 883, 887 (6th Cir.2002), the present-day reality is that the better-reasoned decisions simply apply standard "minimum contacts" due process analysis, without the so-called "intractivity" workaround as a substitute for complying with the law. E.g., GTE New Media Svc v. BellSouth Corp, 199 F.3d 1343 (D.C. Cir. 2000); Spacey v. Burgar, 207 F. Supp. 2d 1037 (C.D. Cal. 2002).

any copyright) <u>prior</u> to any alleged public release of Nucore, that (if it happened) the Plaintiff is likely to concede, was promptly discontinued, never to resume. There is no possibility of any lost sales, because Nucore was no longer in the market. And Lipham has not profited from any alleged activity, in any way.

Would the <u>Calder</u> "effects test" support jurisdiction in a case involving a privileged communication that was allegedly defamatory — say, a statement made during trial or grand jury testimony in Georgia? Statements made in court, generally, are not actionable as defamatory. E.g., <u>Taylor v. Streicher</u>, 465 Fed. Appx. 414, 422 (2012) (grand jury testimony cannot be the subject of a defamation lawsuit). The core argument that Defendant makes is a simple common-sense principle, and ought to be applied as an equitable defense in any case such as this one, involving a Plaintiff's violation of the GNU General Public License, is that an implied license ought to be recognized (and constitute a blanket defense) any time that a derivative work based on a GPL-protected work like QEMU, is released in a proprietary way, without fulfilling the community-based give-back requirements of the GPL. In such circumstances, there is no possibility of tortious intent on the part of the person relying upon the GPL license terms, that the plaintiff inequitably violated. And, hence, just as it is impossible to defame somebody in the course of grand jury testimony, in a case such as this one, there is no possibility of an intent to harm Big Guys Pinball. Just a reasonable and equitable reliance on BGP's mandatory obligations under the GPL. Hence, <u>Calder</u> "effects test" jurisdiction would be completely illogical — and more to the point, for jurisdiction purposes — unreasonable.

Another reason to decline to exercise jurisdiction, or to require venue in Georgia, is comity between Michigan and Georgia. In <u>K.D.F. v. Rex</u>, 878 S.W.2d 589, 594 & n.4 (Tex. 1994), the Texas Supreme Court adopted a novel analysis for handling questions of interstate

comity, when jurisdiction is involved, and dismissed a lawsuit against a foreign (Kansas) defendant, in the interest of fostering voluntary cooperation. Texas is a "selective comity" state, that looks to whether other states are cooperative, in deciding whether to reciprocate. Georgia, it turns out, is "cooperative" in the sense of showing a high level of deference to other states' power to regulate the conduct of their own citizens. Huggins v. Boyd, 304 Ga. App. 563, 697 S.E.2d 253 (Ga. App. Jun 22, 2010). To be clear, we do not for the moment condone any aspect of the obviously tortious and disturbing intentional "stalking" behavior at issue in Hugins v. Boyd. However, due to the intentional, and clearly harmful, nature of the conduct, a Georgia court clearly could have applied the Calder standard, to exercise jurisdiction over the out-of-state (South Carolina) defendant. And yet, Georgia voluntarily elected to exercise a light touch, and not to regulate the conduct of the South Carolina defendant. We respectfully suggest that – to the extent that jurisdiction is a function of this honorable Court's location in Michigan, that it would be a prudent course of action – in the interest of comity and cooperation among multiple sovereigns, to defer to courts located in Georgia, to handle the issues in this case.

Finally, the *forum non conveniens* doctrine supplies yet another strong reason for this case to be litigated, if at all, in Georgia. E.g., Sinochem Int'l Co. v. Malaysia Int'l Shipping Corp., 549 U.S. 422, 435-36, 127 S. Ct. 1184 (2007) (dismissing on *forum non conveniens* grounds, because addressing issue of personal jurisdiction would essentially require "mini-trial" on the side-issue of forum contacts). As the facts stated in Mr. Lipham's affidavit show, litigation in Michigan would be profoundly inconvenient and vexatious for this individual out-of-state defendant.

**TRANSFER OF VENUE**

Under 28 U.S.C. sec. 1404, venue should be transferred to the Northern District of Georgia, for the convenience of parties and witnesses. Any documents to be used by the Plaintiff are already attached to the Complaint, and are geographically irrelevant. Documents to be secured in discovery, are all in Georgia, not in Michigan. Any witnesses with personal knowledge of any of Mr. Lipham's alleged activities, all are located in Georgia. Travel from Georgia to Michigan is not convenient for Mr. Lipham. For purposes of 28 U.S.C. sec. 1400, concerning venue in copyright cases, Mr. Lipham cannot be found in Michigan, and never has been able to be found in Michigan. The venue selected by the Plaintiff is just plain wrong.

**REASONS FOR DISMISSAL**

Additionally, the case should be dismissed for failure to state a claim. It would be grossly inequitable to allow Big Guys Pinball to sue Jimmy Lipham. Although various courts clearly have recognized that the GPL is enforceable, and that the "give back" community requirements are essential terms of the license, we acknowledge that it is a novel theory to suggest that a court equitably impose an implied (GPL or LGPL) license on an entity like Big Guys Pinball, that so obviously has tried to sell a derivative work of QEMU for profit, without fulfilling the community-based "give back" requirements. However such a defense makes perfect sense, and the essential elements – the essential identity between QEMU and Nucore – are amply demonstrated in the attachments to Lipham's affidavit.

Big Guys Pinball created a derivative work of QEMU, and then violated both the copyright of the QEMU authors, and also the GPL and LGPL (of which licenses, Lipham is an intended third-party beneficiary).

Even assuming that all the allegations in the Complaint are true, all Lipham is accused of doing, is exactly what the GPL and LGPL give him every legal right to do, when Big Guys Pinball intentionally chose not to fulfill the "give back" requirements of the GPL and LGPL, with respect to their derivative work of QEMU.

Should it be necessary to file a third-party-standing-based intended beneficiary "dec action" lawsuit, in the capacity as an active participant in the Free Software ecosystem, and spend all the money that litigation entails to secure a declaratory judgment, in order to secure the benefit of the license that BGP willfully violated? Especially when someone in Lipham's position, cannot profit in any way from such reliance on implied Free Software licenses, that is a rather extraordinary barrier to impose in order to remedy GPL violations such as that done by BGP. Or is it a more reasonable approach for someone in Lipham's position to assert a GPL-based equitable defense, in the face of a lawsuit such as this one. We respectfully suggest that the latter course is a reasonable one, and carries with it the added benefit of minimizing the use of scarce judicial resources (fewer lawsuits overall, and lawsuits that get filed more quickly dismissed), because it will be up to infringers in the position of BGP, to decide whether to litigate about it – rather than posing a very expensive obstacle to remedies like the one Lipham reasonably and equitably sought to exercise in this case.

Finally, the Complaint is subject to dismissal, either as a whole or in part, due to the operation of Section 412 of the Copyright Act, and the requirement of registration. The Plaintiff's registration was not effective until January 31, 2014, and everything that the Plaintiff alleges preceded that date. We do not believe (in light of Big Guys Pinball's apparent violation of the GPL and the LGPL), that any infringement whatsoever, occurred.

But even assuming all the allegations in the Complaint to be true, Section 412, 17 U.S.C. sec. 412, still is fatal to the Plaintiff's claims.  There is nothing to enjoin – obviously – because Lipham categorically disavows that he is personally going to copy Nucore without authorization, or distribute Nucore publicly, in the future. There is no possibility of attorney fees because of <u>Buckhannon</u> and because of Section 412.  And there is no profit to disgorge.  Lipham has not made a dime.  Finally, there is no possibility of lost profit, on or after the effective date of registration, because Nucore had already been sold out in the marketplace, everywhere, long before registration – and BGP has completely halted all of its distribution of Nucore – without subsequent resumption.

In short, there is no basis for any remedy under the Copyright Act, for BGP.  BGP does assert some state-law claims (over which Michigan courts should have no jurisdiction in any event because Lipham is in Georgia) – but those easily are handled once the copyright claims are dismissed.  In the absence of a federal copyright claim, ancillary jurisdiction related to state-law claims, need not be exercised, and the matter can be dismissed for BGP to pursue its claims, if at all, in a more appropriate forum.

Accordingly, the Defendant respectfully prays that the lawsuit be dismissed for the reasons set forth above.

Dated:  January 14, 2015                                        Respectfully submitted,

  /s/ Eric C. Grimm
Eric C. Grimm (P58990)
WILLIAMS | HUGHES, PLLC
120 W. Apple Avenue
P.O. Box 599
Muskegon, MI 49443-0599
231-728-1111
Fax: 231-727-2130
Email: ecgrimm@williamshugheslaw.com

## CERTIFICATE OF SERVICE

I certify that the foregoing Motion to Dismiss, and Motion to Transfer Venue, was filed through the Court's Electronic Case Filing (ECF) system, on January 9, 2015, and is being filed in amended form on January 14, 2015.  The ECF system will automatically transmit a copy of said motion to all counsel of record.  A paper copy, with exhibits, is being sent via First Class Mail, postage prepaid, to Chambers and to Plaintiff's counsel.

                                        Respectfully submitted,


Dated: January 14, 2015                 __/s/ Eric C. Grimm_____
                                        Eric C. Grimm (P58990)
                                        Williams | Hughes, PLLC
                                        120 West Apple Avenue
                                        P.O. Box 599
                                        Muskegon, MI  49443-0599
                                        (231) 728-1111
                                        Fax:   (231) 727-2130
                                        Email:
                                        ecgrimm@williamshugheslaw.com