UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

BIG GUY'S PINBALL, LLC

    Plaintiff,

v.

JIMMY LIPHAM,

    Defendant.

Case No. 2:14-CV-14185-VAR-RSW

Honorable VICTORIA A. ROBERTS
U.S. District Judge, Presiding

Honorable R. STEVEN WHALEN
U.S. Magistrate Judge, Referral

_____/

| | |
|---|---|
| Robert A. Farr, Jr. | Eric C. Grimm (P58990) |
| ROBERT A. FARR PLLC | ERIC C. GRIMM, PLLC |
| Attorney for Plaintiff | Attorney for Defendant |
| 1050 Shiawassee Circle | P.O. Box 41 |
| Howell, MI 48843 | Muskegon, MI 49443-0041 |
| 248-703-0662 | 734.717.4900 |
| Email: rfarr@rfarrlaw.com | Email: ecgrimm@umich.edu |

_____/

## DEFENDANT'S ANSWER AND AFFIRMATIVE DEFENSES

## JURY DEMAND

Defendant, Jimmy Lipham, by undersigned counsel, respectfully states for his answer and affirmative defenses:

1.    Admitted that Big Guys Pinball, LLC ("BGP"), is a Michigan LLC with its principal place of business in Michigan.

2.    Admitted that Jimmy Lipham resides solely in Georgia. On the date of this Answer, the Internet domain name playpinbox.com, according to "whois" records, is not registered to anybody.

3.    The allegations in Paragraph 3 seek to characterize the action, and no response is required. To the extent that a response is required, the allegations are denied as untrue. This <u>is</u> an action about a copyrighted work of authorship (a computer program) – but it is <u>really</u> about a

copyrighted work called QEMU. The QEMU Website states:

> QEMU is a generic and open source machine emulator and virtualizer.
>
> When used as a machine emulator, QEMU can run OSes and programs made for one machine (e.g. an ARM board) on a different machine (e.g. your own PC). By using dynamic translation, it achieves very good performance.
>
> When used as a virtualizer, QEMU achieves near native performances by executing the guest code directly on the host CPU. QEMU supports virtualization when executing under the Xen hypervisor or using the KVM kernel module in Linux. When using KVM, QEMU can virtualize x86, server and embedded PowerPC, and S390 guests.

A recent press release on the Software Freedom Conservancy website states:

> Bradley M. Kuhn, Conservancy's President and Distinguished Technologist, commented "QEMU is an essential piece of operating system infrastructure, as well as the testing ground for virtualization code. Many of the most famous Free Software projects, including Linux and OpenStack, would not be where they are today without the tireless and detailed virtualization work done by the QEMU developers. I am delighted for QEMU to join Conservancy, so that Conservancy can assist the QEMU developers to continue their excellent work in the public good."

QEMU was, until recently, a trademark of Fabrice Bellard (current trademark status may be changing). The copyright to QEMU, prior to July 23, 2015, belonged exclusively to Fabrice Bellard (the "maintainer") and to other contributors to the QEMU project. On July 23, 2015 (a few days before this Answer was filed), the Software Freedom Conservancy ("SFC") announced that it now serves as home for the QEMU copyright. See < http://sfconservancy.org/news/2015/jul/23/qemu-joins/ >. BGP categorically does not own the copyright to QEMU, and has no exclusive rights whatsoever to QEMU (this also means that BGP categorically has no right to exclude anyone from any derivative works based on QEMU, unless – under the terms of the GNU General Public License, version 2, and/or the LGPL, version 3 – BGP refrains totally from copying or distributing said derivative work(s) to any third-parties). Under Section 106 of the Copyright Act (Title 17), the new owner of QEMU (the SFC) enjoys the following **exclusive** rights granted by Congress (emphasis added): "(1) to reproduce the copyrighted work in copies or phonorecords; (2) **to prepare derivative works based upon the copyrighted work**; [and] (3) to distribute copies or phonorecords of the copyrighted work to the public by sale or other transfer of ownership, or by rental, lease, or lending." SFC's legal rights under the Copyright Act would include any existing legal claims based on ownership of QEMU, that the maintainer and contributors might previously have had. Fabrice Bellard and the other community members of the QEMU project (and now the SFC), have granted a **copyright license** (called the GNU General Public License, version 2), that – subject to specified mandatory preconditions – allows others (including BGP) to make some copies and derivative works. But if a derivative work is prepared and distributed in a way inconsistent with those mandatory preconditions, then it is a violation of the Copyright Act (and of the copyright laws in nearly every country), and completely illegal, for BGP to copy or distribute the infringing derivative work. BGB did not create any pinball

emulator "from scratch," or as any <u>original work of authorship.</u> (Note: Section 102 of the Copyright Act specifically states that the subject-matter of copyright, pertains to **original** works, which "Nucore" emphatically is not: "Copyright protection subsists, in accordance with this title, in **original** works of authorship fixed in any tangible medium of expression . . . ."). It would have taken tens of thousands of person-hours, for BGP to perform the monumental task of writing an emulator "from scratch." Instead, what BGP did was to steal the intellectual property of the QEMU community, by preparing an emulator derivative of QEMU and recycling QEMU code, by violating the QEMU copyright, and then attempting to profit illegally off the efforts of the maintainer, contributors, and community of QEMU and Free Software. What BGP did was to make some minor modifications of the QEMU source code (<u>i.e.</u>, a derivative work based on QEMU), and then to copy, sell, and distribute that infringing derivative work in violation of the Copyright Act. BGP also violated the law by removing the copyright notices and credits from QEMU, and attempting (in violation of Section 1125 of the Lanhan Trademark Act, among other laws) to pass off the infringing derivative work ("Nucore" will be referenced herein as "IDW" meaning Infringing Derivative Work) as BGP's computer program, rather than an infringing derivative of QEMU. Indeed, the Big Guys Pinball Website has several videos from 2008, featuring a computer whose proprietary operating system has been replaced with the Linux® kernel, and a distribution of the related GNU/Linux operating system, that helps confirm the <u>real</u> provenance of the IDW. <u>See</u> < http://www.bigguyspinball.com/meda.shtml >. Notably, BGP on June 2, 2015 (<u>i.e.</u>, long after this lawsuit was filed, and <u>after</u> much og the briefing was done on motions to dismiss), BGP backhandedly acknowledged the huge debt it owed to the Free Software community: "Nucore contains some components which are free source code . . . . If you would like a copy of the free software components of Nucore, please provide the detail below and remit with a $35 money order

payment to cover the cost of an optical CD containing that code, plus packaging, postage, and handling fees, and the materials will be mailed to you via USPS." This belated "revision" by BGP suffers from two flaws. First of all, instead of filing a "dec action" in federal court, seeking a neutral and objective analysis of whether any "components" or "side-files" of the IDW (other than the Williams ROMs, which both BGP and Defendant agree are proprietary solely to Williams), BGP improperly appointed itself judge of what is or is not legal. If BGP itself is guilty of illegal "self-help" in this way, BGP lacks any equitable basis to complain of self-help by anyone in the Free Software community. Second, even assuming for the sake of argument (and we have no reasdon to believe this is right), that BGP actually analyzed its copyright and licensing obligations correctly and reached the identical result that a federal judge would have reached in a properly-filed "dec action" prior to BGP distributing the IDW illegally, still the procedure that BGP has adopted starting in June, 2015 (thereby acknowledging that BGP was doing it wrong the whole time prior to 2015), does not conform to the requiremens of the GPL v2 or the LGPL v.3. BGP admits it has an obligation to distribute something involving Free Softwarte because of Copyright Act and licensing requirements – but even the part that BGP admits it must distribute, is not being done in a way that fulfills the legal requirements for distributing such derivatives of Free Software copyrighted works.

    4.    Complete diversity exists; also federal courts have exclusive jurisdiction of copyright cases, which cannot be filed in state court.

    5.    Subject-matter jurisdiction is uncontested.

    6.    The allegations in paragraph 6 are categorically denied as untrue. Unlike the magazine in Calder v. Jones, which sold 10,000 copies of its publication in California (i.e., doing business in a "continuous and systematic manner" in California), the Defendant in this case has conducted absolutely no activity whatsoever, at any time, in the state of Michigan, and never has

purposefully availed himself, ever, of Michigan or of any benefits or protections of its laws. See also Spacey v. Burgar, 207 F. Supp. 2d 1037 (C.D. Cal. 2002) (Feess, J.) (correctly analyzing due process issues, rather than merely supposing that mere allegation of "harm" to a plaintiff in forum state, automatically manufactures personal jurisdiction). The mere presence of the Plaintiff in Michigan, has nothing to do with the Defendant, and is categorically insufficient to satisfy due process requirements. And all the court has is the Plaintiff's conclusory allegation (which is also false) that the Plaintiff somehow allegedly "felt injury" to Plaintiff's willful and illegal infringement scheme of violating both the copyright and the license for QEMU.

7. Denied. Supplemental jurisdiction does not exist, and the state-law causes of action are completely pre-empted by the Copyright Act.

8. Denied. BGP has no "property" in either QEMU or any IDW of QEMU. There is no "property" in Michigan, and no activity whatsoever by the Defendant (as opposed to willful infringement by the Plaintiff only) occurred anywhere near Michigan. The allegations are totally false.

9. Denied as untrue. The Copyright Office merely provides a registration mechanism, and does not adjudicate questions of ownership or infringement. The IDW is not an original work of authorship, and instead is an illegal and infringing derivative of QEMU. BGP already admits that at least part of the IDW is infringing, and has been since 2008, so the only thing to adjudicate (which BGP could have done in advance, but did not), is how much of the IDW infringes both the Copyright Act and Free Software licenses. Defendant respectfully asserts that, if this honorable Court is going to adopt BGP's position that "self-help" should be discouraged, somehow, and that the filing of declaratory judgment actions in federal court ought to required as a prerequisite for distributing potentially infringing works to third parties – in lieu of so-called "self help" – then that new "dec

action" rule (which would be completely novel and never has previously been articulated by any federal court to our knowledge – only by BGP), ought to be **applied even-handedly** both to BGP and to Lipham. BGP does not get to appoint itself judge of whether the IDW is infringing or not, or (more precisely) what parts are infringing and which are not. BGP easily could have filed a "dec action" in federal court, seeking a ruling that parts or "components" of the IDW purportedly do not infringe QEMU (thus, separating the sheep from the goats, so to speak), and that BGP purportedly has exclusive rights to parts of the IDW, independent of the QEMU maintainer, contributors, and community. (BGP kindly has conceded that some parts of the IDW are "Free Software" and that BGP has been infringing the copyrights on what BGP also concedes are the Free Software "components" of the IDW, at least from 2008 to June, 2015). Obviously, BGP did not file the "dec action" that BGP would (without fair notice to Defendant that any such rule exists, and without precedent), retroactively require of Defendant. BGP attaches no such certified judgment of any court. BGP ought not to be allowed by this honorable Court, to usurp the authority of the federal courts, and to appoint itself judge in its own case as to which "components" of the IDW are infringing of the Copyright Act and Free software licenses, and which are not. Accordingly, the allegations by BGP in Paragraph 9 are categorically insufficient to state any claim upon which relief can be granted, unless BGP itself has fulfilled what BGP proposes ought to be the precondition of securing a declaratory judgment as to what rights are exclusive and which are not, prior to distributing anything to any third party. Sauce for the goose, is good for the gander, so to speak.

10. Denied as false. When BGP began distributing the IDW to third parties, it automatically granted an equitable implied license to everyone, under the terms of the GPL and/or the LGPL, to redistribute the same in as much compliance with those licenses as could reasonbly be achieved (i.e., BGP was the stumbling block to providing the full source code as required, and

the community should not be punished or deprived of software that is required by law to be Free, due to the infringer's (BGP's) intransigence).

11. Admitted that the IDW is an emulator of the computer hardware contained in Williams pinball machines, and is a derivative work of QEMU, which was prepared without permission of the owners of the QEMU copyright. Except as expressly admitted herein, the Defendant lacks sufficient knowledge or information to form a belief about the truth or untruth of the allegations, which is the same as a denial.

12. Defendant lacks sufficient knowledge or information to form a belief about the truth or untruth of the allegations, which is the same as a denial. On information and belief, the license from Williams is *not* exclusive, and Williams has other licensees of these works.

13. Denied as untrue that the copying or distribution distribution of the IDW to any third-parties by BGP ever was lawful. Otherwise, Defendant lacks sufficient knowledge or information to form a belief about the truth or untruth of the allegations, which is the same as a denial.

14. Defendant lacks sufficient knowledge or information to form a belief about the truth or untruth of the allegations, which is the same as a denial.

15. Defendant lacks sufficient knowledge or information to form a belief about the truth or untruth of the allegations, which is the same as a denial.

16. Defendant lacks sufficient knowledge or information to form a belief about the truth or untruth of the allegations, which is the same as a denial.

17. Defendant lacks sufficient knowledge or information to form a belief about the truth or untruth of the allegations, which is the same as a denial.

18. Defendant believes that he has been identified by Comcast as being assigned this IP address at this time.

19. Defendant lacks sufficient knowledge or information to form a belief about the truth or untruth of the allegations, which is the same as a denial.

20. Defendant was the owner of that IP address at the time, and Defendant posted the announcement to the Internet pinball forum Pinside.com. Except as expressly admitted herein, the Defendant lacks sufficient knowledge or information to form a belief about the truth or untruth of the allegations, which is the same as a denial.

21. No response required.

22. The same message that was posted to pinside was also posted by Defendant to the Internet newsgroup rec.games.pinball. At the time, Defendant owned the domain playpinbox.com and the email address support@playpinbox.com (although the registration for the domain name has subsequently lapsed). Except as expressly admitted herein, the Defendant lacks sufficient knowledge or information to form a belief about the truth or untruth of the allegations, which is the same as a denial.

23. Denied as untrue that there was any infringement, except by the Plaintiff, or that there was any "time of the infringement." Otherwise, in or about August 1, 2013, Jimmy Lipham previously was the registrant of the internet domain name playpinbox.com. There is nothing the least bit nefarious about the use of Domains by Proxy, which is a common and customary practice on the Internet. Except as expressly stated herein, Defendant lacks sufficient knowledge or information to form a belief about the truth or untruth of the allegations, which is the same as a denial.

24. Denied that there was any infringement, except by the Plaintiff. Otherwise, Defendant lacks sufficient knowledge or information to form a belief about the truth or untruth of the allegations, which is the same as a denial.

25. Denied that Defendant has ever owned or registered the 3-letter domain name "PPB.com." Admitted that in or about August, 2013 (i.e., prior to the filing of any registration papers by BGP with the Library of Congress on **January 31, 2014**), the Defendant was the registrant for the Internet domain name "playpinbox.com" – and that the domain name was used (as many domain names are) as a shorthand for the IP address of a webserver, used to publish a website. Otherwise, Defendant lacks sufficient knowledge or information to form a belief about the truth or untruth of the allegations, which is the same as a denial.

26. No response is required.

27. The foregoing responses are repeated as if set forth verbatim herein.

28. The only thing illegal that has occurred in this case is the infringement of the QEMU copyright, by BGP, when BGP failed to license the IDW under the GPL and/or LGPL, and failed to provide access to the complete source code of the IDW (or, at the very least, all Free "components" of the IDW) every time that BGP distributed a copy of the IDW to a third-party. Indeed, under Section 1201 of the Copyright Act, the Library of Congress has issued specific rules that authorize and approve the circumvention of anti-copying technologies in some circumstances. We respectfully note that if these rules do not permit what BGP claims should be forbidden, then BGP's own actions involving what amount to videogames are equally suspect. Otherwise, Defendant lacks sufficient knowledge or information to form a belief about the truth or untruth of the allegations, which is the same as a denial.

29. Denied as untrue. The only infringer is BGP; and the only work infringed is QEMU.

30. Denied as untrue.

31. The foregoing responses are repeated as if set forth verbatim herein.

32. Denied as untrue.

33. Denied as untrue. There is no "trade secret" and BGP is required by law to release the source code, in order to distribute the IDW to anybody. If there are any "trade secrets" associated with Williams pinball machines, they belong to Williams, not to BGP, and any reverse engineering done by BGP to bypass Williams's protection of its own trade secrets, certainly does not make BGP the holder of any of Williams's trade secrets.

34. Denied as untrue.

35. The foregoing responses are repeated as if set forth verbatim herein.

36. Denied as untrue.

37. Denied as untrue. Producing a proprietary emulator "from scratch" and not as a derivative of a Free Software emulator, would necessarily have been a money-losing business. While the GPL does not prohibit BGP from charging for distributing copies of the IDW, the terms of the GPL also necessarily mean that any customer of BGP (if BGP does not violate with Copyright Act with each and every copy) also would have the power to distribute the same thing for free. So if BGP were to distribute the IDW in a lawful (as opposed to the current infringing) manner, BGP would need to find a somewhat different sustainable business model in order to fulfill its obligations incurred as a result of stealing the intellectual property of SFC, the QEMU maintainer, contributors, and community.

38. Denied as untrue.

39. Denied as untrue.

40. Denied as untrue.

41. Denied as untrue.

42. Denied as untrue.

**AFFIRMATIVE DEFENSES**

1. BGP fails to state a claim upon which relief can be granted.

2. BGP has no exclusive rights in the IDW because the IDW is not an original work of authorship.

3. BGP has unclean hands.

4. BGP has violated the copyright on QEMU, of which the IDW is an infringing derivative work.

5. BGP has violated the copyright license that defines the conditions under which QEMU or any work based on QEMU (including but not limited to the IDW), may be copied or distributed.

6. Defendant's actions were privileged because the IDW on its face was and is an infringing derivative of QEMU, and Big Guys Pinball failed to follow its own proposed "declaratory judgment rule" by failing to seek a declaration from a federal court that limited "components" of the IDW somehow are not infringing of QEMU, prior to distributing the IDW illegally to third parties.

7. Defendant is not subject to personal jurisdiction in this judicial district.

8. Venue is not proper.

9. The Defendant's activities are supported by the Copyright Act.

10. The Defendant's activities are supported by the GNU General Public License, version 2, and/or the GNU Lesser General Public License, version 3.

11. The Defendant's activities are supported by regulations issued under the Copyright Act.

12. Some of the Defendant's alleged activities are entirely appropriate reverse engineering, authorized by law.

13. Plaintiff's state-law claims are barred by total pre-emption under the Copyright Act.

14. Plaintiff's claims are barred in whole or in part by estoppel, acquiescence, or *laches*.

15. Plaintiff's claims are moot, because the Defendant is not copying or distributing any of the alleged software, has not done so since long prior to the Plaintiff's registration with the Copyright Office, and intends not to make or distribute copies of anything in the future.

17. Plaintiff's claims are barred in whole or in part, because the lack of timely copyright registration by the Defendant precludes the Defendant from seeking most of the remedies that would normally be available under the Copyright Act.

## JURY DEMAND

Defendant respectfully demands a trial by jury as to all matters that may be so tried.

                                                                          Respectfully submitted,

July 29, 2015                                    s/ Eric C. Grimm (P58990)
                                                                          ERIC C. GRIMM, PLLC
                                                                          Attorney for Defendant
                                                                          P.O. Box 41
                                                                          Muskegon, MI 49443-0041
                                                                          734.717.4900
                                                                          Email: ecgrimm@umich.edu

UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

BIG GUY'S PINBALL, LLC

      Plaintiff,

      v.

JIMMY LIPHAM,

      Defendant.

Case No. 2:14-CV-14185-VAR-RSW

Honorable VICTORIA A. ROBERTS
U.S. District Judge, Presiding

Honorable R. STEVEN WHALEN
U.S. Magistrate Judge, Referral

_____/

## CERTIFICATE OF SERVICE

      Eric Grimm (P58990), attorney for Defendant, certifies that on July 29, 2015, I filed the Defendant's Answer and Affirmative Defenses with the Court via the ECF system, which will provide notice and service of such documents upon all parties by their counsel of record.

      ERIC C. GRIMM, PLLC

      By: s/ Eric C. Grimm (P58990)
      Attorney for Defendant
      ERIC C. GRIMM, PLLC
      Attorney for Defendant
      P.O. Box 41
      Muskegon, MI 49443-0041
      734.717.4900
      Email: ecgrimm@umich.edu